[Civ. No. 773.   Fifth Dist.   Dec. 14, 1967.]

MOUNTAIN BROW LODGE NO. 82, INDEPENDENT ORDER OF ODD FELLOWS, Plaintiff and Appellant, v. JOSEPH L. TOSCANO et al., Defendants and Respondents.

D. Oliver Germino for Plaintiff and Appellant.

Roy Lower for Defendants and Respondents.

GARGANO, J.—This action was instituted by appellant, a nonprofit corporation, to quiet its title to a parcel of real property which it acquired on April 6, 1950, by gift deed from James V. Toscano and Maria Toscano, both deceased. Respondents are the trustees and administrators of the estates of the deceased grantors and appellant sought to quiet its title as to their interest in the land arising from certain conditions contained in the gift deed.

The matter was submitted to the court on stipulated facts and the court rendered judgment in favor of respondents. However, it is not clear from the court's findings of fact and conclusions of law whether it determined that the conditions were not void and hence refused to quiet appellant's title for this reason, or whether it decided that appellant had not broken the conditions and then erroneously concluded that "neither party has a right to an anticipatory decree" until a violation occurs.[1] Thus, to avoid prolonged litigation the parties have stipulated that when the trial court rendered

_____

[1] It is settled that in a quiet title action involving a controversy over the validity of a restriction or condition contained in the deed the plaintiff need not break the condition in order to secure declaratory relief (*Hess* v. *Country Club Park*, 213 Cal. 613 [2 P.2d 782]; *Marra* v. *Aetna Constr. Co.*, 15 Cal.2d 375 [101 P.2d 490]).

judgment refusing to quiet appellant's title it simply decided that the conditions are not void and that its decision on this limited issue is the only question presented in this appeal. We shall limit our discussion accordingly.

The controversy between the parties centers on the language contained in the habendum clause of the deed of conveyance which reads as follows: "Said property is restricted for the use and benefit of the second party, only; and in the event the same fails to be used by the second party or in the event of sale or transfer by the second party of all or any part of said lot, the same is to revert to the first parties herein, their successors, heirs or assigns." Respondents maintain that the language creates a fee simple subject to a condition subsequent and is valid and enforceable. On the other hand, appellant contends that the restrictive language amounts to an absolute restraint on its power of alienation and is void. It apparently asserts that, since the purpose for which the land must be used is not precisely defined, it may be used by appellant for any purpose and hence the restriction is not on the land use but on who uses it. Thus, appellant concludes that it is clear that the reversionary clause was intended by grantors to take effect only if appellant sells or transfers the land.

Admittedly, the condition of the habendum clause which prohibits appellant from selling or transferring the land under penalty of forfeiture is an absolute restraint against alienation and is void. The common law rule prohibiting restraint against alienation is embodied in Civil Code section 711 which provides: "Conditions restraining alienation, when repugnant to the interest created, are void." However, this condition and the condition relating to the use of the land are in the disjunctive and are clearly severable. In other words, under the plain language of the deed the grantors, their successors or assigns may exercise their power of termination "if the land is not used by the second party" or "in the event of sale or transfer by second party." Thus, the invalid restraint against alienation does not necessarily affect or nullify the condition on land use (*Los Angeles Inv. Co.* v. *Gary*, 181 Cal. 680 [186 P. 596, 9 A.L.R. 115]).

The remaining question, therefore, is whether the use condition created a defeasible fee as respondents maintain or whether it is also a restraint against alienation and nothing more as appellant alleges. Significantly, appellant is a non-profit corporation organized for lodge, fraternal and

similar purposes. Moreover, decedent, James V. Toscano, was an active member of the lodge at the time of his death. In addition, the term "use" as applied to real property can be construed to mean a "right which a person has to use or enjoy the property of another according to his necessities" (*Mulford* v. *LeFranc* (1864) 26 Cal. 88, 102). Under these circumstances it is reasonably clear that when the grantors stated that the land was conveyed in consideration of "love and affection" and added that it "is restricted for the *use* and benefit of the second party" they simply meant to say that the land was conveyed upon condition that it would be used for lodge, fraternal and other purposes for which the non-profit corporation was formed. Thus, we conclude that the portion of the habendum clause relating to the land use, when construed as a whole and in light of the surrounding circumstances, created a fee subject to a condition subsequent with title to revert to the grantors, their successors or assigns if the land ceases to be used for lodge, fraternal and similar purposes for which the appellant is formed.[2] No formal language is necessary to create a fee simple subject to a condition subsequent as long as the intent of the grantor is clear. It is the rule that the object in construing a deed is to ascertain the intention of the grantor from words which have been employed and from surrounding circumstances (*Brannan* v. *Mesick*, 10 Cal. 95; *Aller* v. *Berkeley Hall School Foundation*, 40 Cal.App.2d 31 [103 P.2d 1052]; *Schofield* v. *Bany*, 175 Cal.App.2d 534 [346 P.2d 891].)

It is of course arguable, as appellant suggests, that the condition in appellant's deed is not a restriction on land use but on who uses it. Be this as it may, the distinction between a covenant which restrains the alienation of a fee simple absolute and a condition which restricts land use and creates a defeasible estate was long recognized at common law and is recognized in this state.[3] Thus, conditions re-

---

[2]It is arguable that the gift deed created a fee simple determinable. However, in doubtful cases the preferred construction is in favor of an estate subject to a condition subsequent (2 Witkin, Summary Cal. Law, (1960) Real Property § 97, pp. 949-50).

[3]The distinction between defeasible estates and future interests which also curtail alienation was recognized at common law. In fact, the creation of future interests, through trusts and similar devises, whose vesting could be indefinitely postponed, resulted in the development of the rule against perpetuities. Significantly, the rule against perpetuities has no

stricting land use have been upheld by the California courts on numerous occasions even though they hamper, and often completely impede, alienation. A few examples follow: *Mitchell* v. *Cheney Slough Irr. Co.*, 57 Cal.App.2d 138 [134 P.2d 34] (irrigation ditch); *Aller* v. *Berkeley Hall School Foundation*, 40 Cal.App.2d 31 [103 P.2d 1052] (exclusively private dwellings); *Rosecrans* v. *Pacific Electric Ry. Co.*, 21 Cal.2d 602 [134 P.2d 245] (to maintain a train schedule); *Shultz* v. *Beers*, 111 Cal.App.2d 820 [245 P.2d 334] (road purposes); *Firth* v. *Marovich*, 160 Cal. 257 [116 P. 729, Ann.Cas. 1912D 1190] (residence only).

Moreover, if appellant's suggestion is carried to its logical conclusion it would mean that real property could not be conveyed to a city to be used only for its own city purposes, or to a school district to be used only for its own school purposes, or to a church to be used only for its own church purposes. Such restrictions would also be restrictions upon who uses the land. And yet we do not understand this to be the rule of this state. For example, in *Los Angeles Inv. Co.* v. *Gary, supra*, 181 Cal. 680, land had been conveyed upon condition that it was not to be sold, leased, rented or occupied by persons other than those of Caucasian race. The court held that the condition against alienation of the land was void, but upheld the condition restricting the land use. Although a use restriction compelling racial discrimination is no longer consonant with constitutional principles under more recent decisions, the sharp distinction that the court drew between a restriction on land use and a restriction on alienation is still valid. For further example, in the leading and often cited case of *Johnston* v. *City of Los Angeles*, 176 Cal. 479 [168 P. 1047], the land was conveyed to the City of Los Angeles on the express condition that the city would use it for the erection and maintenance of a dam, the land to revert if the city ceased to use it for such purposes. The Supreme Court held that the condition created a defeasible estate, apparently even though it was by necessity a restriction on who could use the land.

Our independent research indicates that the rule is the same in other jurisdictions. In *Regular Predestinarian Baptist Church* v. *Parker*, 373 Ill. 607 [27 N.E.2d 522, 137 A.L.R.

application to defeasible estates because reversions, possibilities of reverter and powers of termination are inherently vested in nature (*Strong* v. *Shatto*, 45 Cal.App. 29 [187 P. 159]; *Caffroy* v. *Fremlin*, 198 Cal.App.2d 176 [17 Cal.Rptr. 668]).

635], a condition " 'To have and to hold . . . as long as the same is used by the Regular Predestinarian Baptist Church as a place of meeting . . .' '" was deemed to have created a defeasible estate by the Supreme Court of Illinois.

In *Frensley* v. *White,* 208 Okla. 209 [254 P.2d 982, 983], the deed to the trustees of a religious organization contained the following language: " 'To Have And To Hold said above described premises unto the said Trustees and their successors in office, as aforesaid, in trust, so long as said premises shall be held, kept and used by said church or any branch thereof, or any successor thereto for a place of divine worship, for the use of the ministry and membership of said church, subject to the usages, discipline and ministerial appointments of said church as from time to time authorized and declared by the General Council of the Assemblies of God Church and by the Annual Council within whose bounds said premises are, or may hereafter be situated.' '" The Supreme Court of Oklahoma treated the estate as a fee determinable, notwithstanding the extreme language of the deed which not only limited the land use but who could use it.

In *Merchants Bank & Trust Co.* v. *New Canaan Historical Soc.,* 133 Conn. 706 [54 A.2d 696, 172 A.L.R. 1275], a parcel of real property was willed to the New Canaan Library Association " 'upon the condition and provided, however, that if said property shall not be used by said Library Association for the purposes of its organization, this devise shall terminate and the property become a part of my residuary estate. . . .' '" There, as here, the language of the condition did not precisely define the restricted use but expressly permitted any use for which the library association was formed. The Supreme Court of Errors of Connecticut clearly indicated that the will had created a fee determinable.

For the reasons herein stated, the first paragraph of the judgment below is amended and revised to read:

"1. That at the time of the commencement of this action title to the parcel of real property situated in the City of Los Banos, County of Merced, State of California, being described as:

Lot 20 Block 72 according to the Map of the Town of Los Banos

was vested in the MOUNTAIN BROW LODGE No. 82, INDEPENDENT ORDER OF ODD FELLOWS, subject to the condition that said property is restricted for the use and benefit of the second party only; and in the event the same fails to be used by the

second party the same is to revert to the first parties herein, their successors, heirs or assigns.''

As so modified the judgment is affirmed. Respondents to recover their costs on appeal.

Conley, P. J., concurred.

STONE, J.—I dissent. I believe the entire habendum clause which purports to restrict the fee simple conveyed is invalid as a restraint upon alienation within the ambit of Civil Code, section 711. It reads: ''Said property is restricted for the use and benefit of the second party, only; and in the event the same fails to be used by the second party or in the event of sale or transfer by the second party of all or any part of said lot the same is to revert to the first parties herein, their successors, heirs or assigns.''

If the words ''sale or transfer,'' which the majority find to be a restraint upon alienation, are expunged, still the property cannot be sold or transferred by the grantee because the property may be used by only the I.O.O.F. Lodge No. 82, upon pain of reverter. This use restriction prevents the grantee from conveying the property just as effectively as the condition against ''sale or transfer . . . of all or any part of said lot.'' (*Los Angeles Inv. Co.* v. *Gary*, 181 Cal. 680, 682 [186 P. 596, 9 A.L.R. 115]; Property Restatement, § 404 et seq.; 2 Witkin, Summary of Cal. Law (1960) Real Property, p. 1004; Simes, *Perpetuities in California since 1951*, 18 Hastings L.J., p. 248.)

Certainly, if we are to have realism in the law, the effect of language must be judged according to what it does. When two different terms generate the same ultimate legal result, they should be treated alike in relation to that result.

Section 711 of the Civil Code expresses an ancient policy of English common law.[1] The wisdom of this proscription as

---

[1] ''The conceptual argument is that the law defines the exact nature of every estate in land, that each has certain incidents which are provided by law, and that one of the principal incidents of a fee is alienability. Manning, *The Development of Restraints on Alienation Since Gray*, 48 Harv.L.Rev. 373 (1935).

''The first of the two reasons most often given for holding restraints void is that a restraint is repugnant to the nature of the fee. *Murray* v. *Green*, 64 Cal. 363 [28 P. 118] (1883); *Eastman Marble Co.* v. *Vermont Marble Co.*, 236 Mass. 138 [128 N.E. 177] (1920); *Andrews* v. *Hall*, 156 Neb. 817 [58 N.W.2d 201, 42 A.L.R.2d 1239] (1963); 5 Tiffany, Real Property § 1343 (3d ed. 1939); Manning, *supra*, at 401. However, Lord Coke believed that restraints were void, not only because they were

applied to situations of this kind is manifest when we note that a number of fraternal, political and similar organizations of a century ago have disappeared, and others have ceased to function in individual communities. Should an organization holding property under a deed similar to the one before us be disbanded one hundred years or so after the conveyance is made, the result may well be a title fragmented into the interests of heirs of the grantors numbering in the hundreds and scattered to the four corners of the earth.

The majority opinion cites a number of cases holding use restrictions in deeds to be valid, but these restrictions impose limitations upon the manner in which the property may be used. The majority equates these cases with the restriction in the instant case to use *by* only Lodge No. 82. It seems to me that a restriction upon the use that may be made of land must be distinguished from a restriction upon *who* may use it. In the first place, a restriction upon the kind of use does not restrain alienation because the property may be conveyed to *anyone,* subject to the restriction. Moreover, as Professor Simes points out in his article, *Restricting Land Use in California by Rights of Entry and Possibility of Reverter,* 13 Hastings Law Journal No. 3, page 293, where changed circumstances are shown a court of equity will free land from a property use restriction.

There is a judicially-created exception to public policy against restraint of alienation embodied in Civil Code section 711 which is broadly defined as ''restraint on alienation when reasonable as to purpose.'' (*Coast Bank* v. *Minderhout, supra,*

repugnant to the fee, but because 'it is absurd and repugnant to reason' that a tenant in fee simple should be restrained 'of all his power to alien.' Co. Litt. 223a.

''The second and more practically oriented reason for holding restraints void is that a restraint, by taking land out of the flow of commerce, is detrimental to the economy. GRAY, RESTRAINTS ON ALIENATION § 21 (2d ed. 1895); 6 POWELL, REAL PROPERTY 1 (1958); 5 TIFFANY, *op. cit. supra,* § 1343. Other reasons have been accepted on occasion by courts: to encourage improvement of property; hampering effect use of property if the buyer could put it to better use than the seller; removal from trade of increasing amounts of capital; not allowing an individual to appear more prosperous than he is, *i.e.,* a borrower may appear to own property outright, thus able to sell it in payment of a debt, where in reality the property is restrained; balance of dead hand control, *i.e.,* recognizing the right of the individual to control property after death by the proposition that life is for the living and should be controlled by the living and not by the extended hand of the dead. Bernhard, *The Minority Doctrine Concerning Direct Restraints on Alienation,* 57 Mich. L.Rev. 1173, 1177 (1959).'' (12 U.C.L.A. L.Rev. No. 3, fn. p. 956.)

61 Cal.2d 311 [38 Cal.Rptr. 505, 392 P.2d 265].) In discussing this subject, a comment in 12 U.C.L.A. Law Review No. 3, says, in part, at pages 955-958: ''The alienability of realty has long been a jealously guarded incident of a fee simple estate. All jurisdictions invalidate absolute restraints on alienation, and *an overwhelming majority void restraints partial as to persons and temporary as to time.* California has codified the common law rule of restraints on alienation in Civil Code section 711. This provision not only voids restraints created by the grantor of an estate in a deed or conveyance but has been judicially interpreted to void restraints created by covenants executed separately from a deed. In mitigation of the harshness stemming from the rule invalidating restraints, both case law and statutory exceptions have been promulgated in most jurisdictions. In California, a restraint on the transfer of shares in a corporation has been upheld, as have the restraints created by the spendthrift trust, a lease for a term of years, and a restraint on the alienability of a life estate. The decision in *Minderhout* distinguished California as the first state not to invalidate a restraint on alienation when reasonable as to purpose.'' (Italics added.)

As I view the restraint in the instant case, it accomplishes no reasonable purpose within the rationale of *Coast Bank* v. *Minderhout, supra,* that would justify the indefinite suspension of alienation.

It also appears that there is some correlation between a restriction upon who may use property, and the exclusion of a racial group from the use of property prohibited by Civil Code section 782. That section provides:

''Any provision in any deed of real property in California, whether executed before or after the effective date of this section, which purports to restrict the right of any persons to sell, lease, rent, use or occupy the property to persons of a particular racial, national or ethnic group, by providing for payment of a penalty, forfeiture, reverter, or otherwise, is void.''

The Restatement of the Law of Property finds parallel reasoning applicable to the two kinds of restrictions, as it is said, in volume 4, chapter 30, section 406, page 2412, that: ''*m. Analogous rule—Use by racial or social group excluded.* The exclusion of a racial or social group is sometimes attempted by a provision designed to prevent use or occupancy of designated land by persons of this excluded group. Such a provision is not a 'restraint on alienation' within the meaning

of that term as defined in § 404. It has the effect, however, of curtailing alienability and the validity of such a provision is determined by the same considerations as are stated in Comment *l*. The applicable rule is analogous to the rule stated in this Section.''

The usual restriction in violation of section 782 specifically excludes Negroes, orientals, or other ethnic groups from using property. Here, *everyone* is excluded except members and guests of Mountain Brow Lodge No. 82, I.O.O.F. Restricting use of land indefinitely to a particular person or class of persons, or a particular organization, if held permissible, will open the way for violation of Civil Code section 782 by use of an inverse exclusionary clause.

In any event, it seems to me that quite aside from section 782, the entire habendum clause is repugnant to the grant in fee simple that precedes it. I would hold the property free from restrictions, and reverse the judgment.

A petition for a rehearing was denied January 12, 1968, and the judgment was modified to read as printed above. Stone, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied February 13, 1968.