[No. G013803. Fourth Dist., Div. Three. May 10, 1994.]

THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff and Respondent, v.
THOMAS H. WILSON et al., Defendants and Appellants.

COUNSEL

Paul B. Witmer, Jr., for Defendants and Appellants.

William M. McMillan, Anthony J. Ruffolo, Robert W. Vidor, Larry R. Danielson, Linda C. Harrel, Carol Quan, and Rene Judkiewicz for Plaintiff and Respondent.

OPINION

SONENSHINE, J.—Thomas H. Wilson appeals from denial of severance damages in a condemnation action.

I

In 1954, the State of California (State) purchased land from Wilson's parents for construction of the Santa Ana freeway. In 1991, it sought to purchase an additional parcel as part of its widening plan. The parties agreed on a price, but Wilson maintained he was entitled to severance damages as well.

The matter proceeded to trial. ██ Wilson argued the erection of a 14-foot sound wall on property bordering the freeway and extending 100 feet onto the recently acquired property would block northbound travelers' views of his business. The State maintained the 1954 deed relinquished Wilson's rights to severance damages and, in any event, no right of view existed. The trial court agreed with the State, finding "the Wilsons and the condemnee had previously quitclaimed all abutter's rights in an earlier taking, and . . . this taking . . . did not revive any abutter's rights. [¶] . . . [A]nd even if that weren't the case . . . as a second basis for the ruling . . . the property had no rights to a view from the freeway." Because no extrinsic evidence is

involved, we exercise our independent judgment in interpreting the written instrument. (*Bos Material Handling, Inc.* v. *Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 105 [186 Cal.Rptr. 740].)

## II

A property owner's abutter's rights include the rights of view, access, light and air. (*Williams* v. *Los Angeles Ry. Co.* (1907) 150 Cal. 592, 594-595 [89 P. 330]; see also *Goycoolea* v. *City of Los Angeles* (1962) 207 Cal.App.2d 729, 733-735 [24 Cal.Rptr. 719].) A right to a view is "the right to maintain a view whereby travellers upon the highway can see the abutting property and be thereby induced to enter upon the property and do business with the owner." (*People* ex rel. *Dept. Public Works* v. *Lipari* (1963) 213 Cal.App.2d 485, 488 [28 Cal.Rptr. 808].) An abutting owner of property on a "public highway [or street] has an easement of reasonable view of his [or her] property from the highway . . . and . . . the impairment or destruction of that view is the destruction of a valuable property right." (*Id.* at p. 488.)

The 1954 deed provided: "This conveyance is made for the purposes of a freeway and the grantor hereby releases and relinquishes to the grantee any and all abutter's rights, including access rights, appurtenant to grantor's remaining property, in and to said freeway." Did Wilson's relinquishment of "any and all abutter's rights" include the right to a view of his property?

Ten years prior to the conveyance of the deed, the court in *People* v. *Ricciardi* (1943) 23 Cal.2d 390 [144 P.2d 799] firmly established that abutter's rights include a view. In *Ricciardi*, a newly constructed underpass prevented highway travelers from seeing Ricciardi's business. The court held, "The right of reasonable view in addition to the right of ingress and egress is . . . one of the easements possessed by the abutting owner . . . ." (*Id.* at p. 404.) Under the law existing at the time of the 1954 deed, Wilson's relinquishment of any and all abutter's rights included the right to a view.

Deeds are to be construed like contracts. (*Schwenn* v. *Kaye* (1984) 155 Cal.App.3d 949, 952 [202 Cal.Rptr. 374]; see also Civ. Code, § 1066.) The language of the deed "must be given a reasonable interpretation and such as will give effect to the intention of the parties." (*People* ex rel. *State Lands Com.* v. *City of Long Beach* (1962) 200 Cal.App.2d 609, 617-618 [19 Cal.Rptr. 585].) The mutual intention of the parties can be shown by the

actual words in the deed and by surrounding circumstances. (*Mountain Brow Lodge, I.O.O.F.* v. *Toscano* (1967) 257 Cal.App.2d 22, 25 [64 Cal.Rptr. 816].) No extrinsic evidence was introduced to show any intention to reserve the right to a view. The only reasonable interpretation is that the State intended to acquire land for a freeway and all abutter's rights in furtherance of that goal. Conversely, it was Wilson's parents' intention to relinquish these rights and in return receive compensation. It would violate the intent of the parties if Wilson were to be compensated a second time.

Wilson contends, despite the deed, he is nevertheless entitled to compensation because the damages he sustained through loss of view were unforseeable. Under the general rule, one who grants land for public use is estopped from claiming foreseeable damages. " ' "[W]henever a grant of a right of way is executed by a land owner he [or she] thereby estops himself [or herself] from afterward prosecuting any action for the past, present, or future damages that may have occurred, or *reasonably be expected to occur*, by reason of the necessary, natural, and ordinary use of the utility or public service for which the right of way is granted." ' " (*Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 265 [42 Cal.Rptr. 89, 398 P.2d 129].) Wilson contends he is not estopped from prosecuting this action because the damages he now claims were unforseeable in 1954.

We are unconvinced. In the first place, the cases cited by Wilson do not support his claim. In none of the cases does the court use forseeability as a basis for awarding or denying severance damages in addition to the compensation the grantor received for the deed relinquishing all abutter's rights.

Wilson's reliance on *Mehl* v. *People* ex rel. *Dept. Pub. Works* (1975) 13 Cal.3d 710 [119 Cal.Rptr. 625, 532 P.2d 489] is misplaced. In *Mehl*, the plaintiff's predecessor granted the State a right of way for construction of a freeway. The deed expressly waived " 'any claims for any and all damages to grantor's remaining property . . . .' " (*Id.* at p. 715.) Fifteen years later, the State initiated a condemnation action to acquire additional land for a freeway drainage ditch. Mehl sought damages resulting from the construction. The State contended the deed estopped Mehl from claiming damages. The trial court found that "plans for a drainage system were not complete in 1959 and [Mehl's predecessors] . . . did not know about, and had not intended to waive the damages that might result from the subsequent construction of the drainage system." (*Id.* at p. 716.) The appellate court affirmed. It held the damages were not reasonably foreseeable. *Mehl* is distinguishable. Mehl

expressly waived any claims for damages, but did *not* relinquish his abutter's rights. Wilson did.[1]

Wilson also relies on *Ellena* v. *State of California* (1977) 69 Cal.App.3d 245 [138 Cal.Rptr. 110], which explains how forseeability should be applied. But *Ellena* did *not* involve a deed relinquishing all abutter's rights. Therefore, its discussion on forseeability of damages is of academic interest only.

## III

Wilson challenges the court's alternative ground for its judgment, i.e., that regardless of the deed, the owner has no legal right to a view of his property from the freeway. But the lower court was correct. A freeway is unlike a highway. An abutter/landowner has a right to a view from a public road or highway. (*People* v. *Ricciardi, supra,* 23 Cal.2d 390, 404.) However, while the purpose of a highway is to provide landowners with abutter's rights, the purpose of a freeway is to eliminate those rights.

The purpose of a public road or highway is to allow abutting owners access from their private roads onto the main road for travel and to allow customers traveling along the road or highway to view a business, drive into it, patronize it, and reenter the highway. (See *People* ex rel. *Dept. Public Works* v. *Lipari, supra,* 213 Cal.App.2d 485, 491.) Such purposes are antagonistic to the purpose of a freeway: "It is the very essence of the idea of a freeway to prevent just that sort of thing." (*Ibid.*) A freeway's purpose is to "provide rapid transit for through traffic, uninterrupted by vehicles or pedestrians from private roads and intersecting streets . . . ." (*Schnider* v. *State of California* (1952) 38 Cal.2d 439, 442 [241 P.2d 1, 43 A.L.R.2d 1068].) For that reason, Streets and Highway Code section 23.5 provides that owners of abutting lands to a freeway have limited or no right of access to or from their abutting lands. Obviously, a freeway restricts rights of access and related rights such as the right to a view.

Wilson testified, without contradiction, that prior to 1954, his property abutted a main thoroughfare or public roads. Though Wilson had a right to a view from the public road, the construction of the freeway and the relinquishment in the 1954 deed eliminated that right.

Even if Wilson's property did *not* abut a public road, he still has no rights to a view because the freeway did not create any abutter's rights. If Wilson's

---

[1]For the same reason, *Williams* v. *Sutter-Butte Canal Co.* (1947) 82 Cal.App.2d 100 [185 P.2d 664], *Albers* v. *County of Los Angeles, supra,* 62 Cal.2d 250, and *Cox* v. *State of California* (1970) 3 Cal.App.3d 301 [82 Cal.Rptr. 896] are also inapt.

property did not abut anything, then he could not have abutter's rights. Abutter's rights could only come into existence by the construction of a road or highway. However, *Schnider* v. *State of California, supra,* 38 Cal.2d 439 correctly stands for the proposition that the construction of a *freeway* does not create abutter's rights. It states that the construction of the freeway "did not create new rights of access in favor of land which did not abut upon the highway as it formerly existed. Where an ordinary or conventional road is built, there may be an intent to serve abutting owners, but when a freeway is established the intent is just the opposite, and a resolution creating a freeway gives adequate notice that no new rights of access will arise unless they are specifically granted." (*Id.* at p. 443.) This rationale applies, a fortiori, to the right to a view.[2]

The judgment is affirmed. The State is awarded its costs on appeal.

Wallin, Acting P. J., and Crosby, J., concurred.

[2]We do not address Wilson's claim that the right to a view is *inherent* in the property and is not created by the freeway. Wilson relies on *People* ex rel. *Dept. Public Works* v. *Lipari, supra,* 213 Cal.App.2d 485. But that case involved an issue of special benefits conferred as an offset to compensation. At trial here, the parties agreed the issue was moot and presented no evidence on it. Thus, we will not reach it on appeal.